*487 OPINION.
MoRRis:
The first allegation of error urged by the petitioner is that the respondent erred in denying the petitioner classification as a personal service corporation as defined in section 200 of the Revenue Act of 1918. That section of the Act provides:
That when used in this title—
* * * * * * %
The term “ personal service corporation ” means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 8, 1917. and November II, 1918, both dates inclusive.
*488 Therefore, in order for the petitioner to prevail in this proceeding, the Act must be satisfied in three particulars, viz, the income must be primarily attributable to the activities of the principal stockholders; the principal stockholders must be regularly engaged in the active conduct of its business; and capital must not be a material income-producing factor. The existence of each of those elements is essential to the classification sought by the petitioner. Appeal of William Morris Enterprises, Inc., 1 B. T. A. 946, and Appeal of Bryant & Stratton Commercial School, Inc., 1 B. T. A. 32.
Examining the facts of record with respect to the first test, that is, the ascribability of the income to the activities of the principal stockholders, we find, that, in addition to the stockholders themselves, who were officers, and actively engaged in the business as salesmen in addition to their other duties, the petitioner employed about forty other people, about fifteen of whom were engaged in purely clerical and administrative work, and about twenty-five of whom were salesmen scattered throughout the United States. We find upon examination of the expense schedule appended to the petitioner’s tax return for the period ended November 30, 1920, that commissions paid to salesmen for that period amounted to $46,018.50, and that salaries, other than those paid to officers, were $92,862.90, which reveals that the salaries paid to salesmen and employees, other than stockholders, were $87,881.40 greater than the amount paid to said stockholders who claim that the petitioner’s income is ascribable primarily to their activities.
With respect to the second test, that is, whether the principal stockholders are in fact regularly engaged in the active conduct of the business, we find that E. W. Robischon, wrho held 50 shares of stock, and his wife, Anna M. Robischon, who held 208 shares, during the taxable period under consideration, took no active part in the conduct of the business whatsoever. Therefore, one stockholder, owning 20.8 per cent of the stock, w'hich, in our opinion, made her one of the principal stockholders, took no part in the conduct of the business, and if the Robischon interests are consolidated, the percentage of ownership of nonactive stockholders is increased to 25.8 per cent, leaving stockholders owning only 74.2 per cent engaged in the active conduct of the business.
With respect to the third test, that is, that capital must not be a material income-producing factor, it would seem only necessary to refer to the figures contained in the balance sheet and the expense tabulation set forth hereinbefore in the findings of fact. It is important, however, to observe in this connection, that the commissions earned on sales made by the petitioner in the fall of the year are not collected until eight or nine months thereafter. Considering this fact, together with the extraordinary large pay roll obligations that *489 must be met in the payment of salesmen and other employees and for the advancement of traveling expenses, it is extremely difficult, if not impossible, to see how it can be successfully maintained that capital is not a material income-producing factor. That these salesmen are responsible for a great portion of the petitioner’s income is clear, and that they must be financed and compensated during the interim between the sale of goods and the collection of commissions therefor is equally as clear.
In addition to the other expenditures heretofore referred to, there are such other items as advertising, traveling expenses, selling expenses, and fire insurance, and in the balance sheet there are obligations in the form of bills paj'able of $62,000, accounts payable of $52,166.56, and commissions due salesmen of $23,933.21, all of which mitigate most strongly against the petitioner’s position.
Considering all of the facts of the case, particularly those brought out in our discussion, together with a further important disclosure that the petitioner, in consideration of an amount in addition to its commissions, guaranteed the collection and payment of accounts due the Augusta Knitting Corporation, we are constrained to hold that the petitioner is not a personal service corporation within the meaning of the Act.
The second allegation of error herein was not urged by the petitioner’s counsel either at the hearing or in his brief. Since it does not appear that the adjustment of invested capital complained of violates the provisions of the regulation in force during the period in question, we are of the opinion that section 1201 of the Revenue Act of 1926 is controlling and that the respondent’s action should be approved.

tJudgment will be entered, for the respondent.